[Cite as *Snider v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-3881.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STEVEN L. SNIDER

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant

    Case No. 2010-02731

Judge Alan C. Travis
Magistrate Matthew C. Rambo

<u>MAGISTRATE DECISION</u>

{¶ 1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} As an initial matter, on February 14, 2011, defendant filed a motion to quash subpoenas served on inmates in defendant's custody. On February 15, 2011, defendant filed a motion to quash subpoenas served on defendant's "medical department." On February 17, 2011, defendant filed a motion to quash subpoenas served on Mansfield Correctional Institution (ManCI) staff. As a result of discussion with the parties before the case was called for trial, the court ORDERS the following: defendant's February 14, 2011 motion is GRANTED with regard to inmates Antonori, Hammen, Kennedy, and Dyson, and DENIED with regard to inmates Clagg and Davis; defendant's February 15, 2011 motion is GRANTED; defendant's February 17, 2011 motion is GRANTED as to Terry Tibbals, Keith Smith, Deputy Warden Bradley, Ms.

Grys, Sharron Berry, Mr. Bell, Corrections Officer (CO) Williams, CO Hermann, CO Combs, CO Gall, CO Simmons, and CO Grey, and DENIED with respect to CO Scott.

{¶ 3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at ManCI pursuant to R.C. 5120.16. Plaintiff testified that on or about December 11, 2008, Corrections Sergeant Ernest Cappadonna came into plaintiff's housing unit, Unit 2B, and asked for volunteers to clean up trash outside the building. According to plaintiff, when nobody volunteered, Cappadonna selected people, including plaintiff, who was a "porter" in the unit. Plaintiff stated that he objected because he had not yet been issued a coat or gloves by the institution, but Cappadonna insisted. Plaintiff testified that Cappadonna gave him one latex glove (Plaintiff's Exhibit 6), and that he and other inmates proceeded outside and began to pick up trash that had accumulated in the yard around the building. According to plaintiff, the glove broke early on, but Cappadonna would not give him another one and told him to hurry up and get the job done. Plaintiff stated that shortly thereafter, he picked up a crumpled piece of paper and suffered a cut to his right pinky finger from a razor blade that was hidden within the paper. According to plaintiff, he could not move the tip of his finger after suffering the cut.

{¶ 4} Plaintiff testified that he picked up a few more items, then reported the injury to Cappadonna and told him he was getting cold. Plaintiff stated that Cappadonna allowed him to go back inside the building and told him to inform a CO on duty of the injury. According to plaintiff, he approached CO Williams at her desk and told her he was cut and needed to go to the infirmary. Plaintiff testified that Williams ordered him away from her desk and said that since he did not appear to be "bleeding to death" he should sign up for "doctor sick call" to get an appointment in the infirmary. Plaintiff stated that he asked inmate Davis for a Band-Aid and signed up for doctor sick call. Plaintiff testified that he did not get to see the doctor about his finger until almost a month later, whereupon he was referred to a specialist. On December 2, 2009, the top

joint of plaintiff's right pinky finger was amputated at The Ohio State University Medical Center.

{¶ 5} Plaintiff asserts that he did not receive sufficient training or equipment to perform the trash cleanup, that Williams was negligent in not permitting him to go to the infirmary when he reported his injury to her, and that his injury required the partial amputation of his finger.

{¶ 6} In order to prevail upon his claim of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Defendant owed plaintiff the common law duty of reasonable care. *Justice v. Rose* (1957), 102 Ohio App. 482, 485. Reasonable care is that which would be utilized by an ordinarily prudent person under similar circumstances. *Murphy v. Ohio Dept. of Rehab. &* Corr., Franklin App. No. 02AP-132, 2002-Ohio-5170, ¶13. A duty arises when a risk is reasonably foreseeable. *Menifee,* supra, at 77. Such a duty includes the responsibility to exercise reasonable care to protect inmates against those unreasonable risks of physical harm associated with institutional work assignments. *Boyle v. Dept. of Rehab. & Corr.* (1990), 70 Ohio App.3d 590, 592.

{¶ 7} While the court is cognizant of a "special relationship" between an inmate and his custodian, no higher standard of care is derived from the relationship. *Clemets v. Heston* (1985), 20 Ohio App.3d 132. The state is not an insurer of the safety of its prisoners; however, once it becomes aware of a dangerous condition in the prison, it is required to take the degree of reasonable care necessary to protect the prisoner from harm. Id.

{¶ 8} Ernest Cappadonna has been employed as a corrections sergeant for 18 years and testified that he regularly assigns inmates to clean up trash outside of Unit 2B. Cappadonna stated that he asks for volunteers in the unit to perform the duty, but

never gets any, and that he then randomly selects eight to ten inmates. According to Cappadonna, he hands out latex gloves and trash bags, takes the inmates outside and supervises them as they pick up trash around the building. Cappadonna testified that he always brings a full box of latex gloves and full roll of trash bags in preparation for the activity. With respect to plaintiff, Cappadonna stated that he has no recollection of selecting plaintiff to pick up trash on either the day in question or any other day. With regard to inmate injuries, Cappadonna testified that if an inmate reported to him during the cleanup with an injury, defendant's policy requires him to report the injury to his supervisor and file an incident report.

{¶ 9} Inmate Tracy Clagg testified that he was familiar with plaintiff from living in 2B. Clagg stated that when it came to trash cleanup, Cappadonna would randomly choose inmates for the assignment, and those inmates would then be given rakes, trash bags, and latex gloves. Clagg testified that he remembered an instance where plaintiff cut his finger during one such cleanup but he was not permitted to see the nurse for treatment.

{¶ 10} Inmate Wiley Davis, Jr. was also housed in 2B at the time of the incident and corroborated plaintiff and Clagg's testimony with respect to the trash cleanup, although he stated that he never took part in the cleanup himself. Davis testified that the cleanup was necessary because inmates would routinely throw trash out of their cell windows and into the yard. Davis stated that on the day of the incident, he did not participate in the cleanup with plaintiff, but that plaintiff came into his cell that day to get a Band-Aid and on that occasion, he observed plaintiff's finger "bleeding profusely."

{¶ 11} Marrinetta Scott has been employed as a CO at ManCI for 15 years and she was posted to 2B at the time of the incident. Scott testified that she did not remember plaintiff cutting his finger. With regard to defendant's policies, Scott testified that if an inmate reports an injury to a staff member, it is up to that staff member to use "common sense" and determine whether the injury is serious enough to warrant calling

the infirmary. However, she further testified that an open or actively bleeding wound requires a call to the infirmary.

{¶ 12} Based upon the foregoing, the court finds that defendant did not commit a breach of duty with regard to the trash cleanup. Specifically, the court finds that while plaintiff did not receive specialized training in trash cleanup, none was required. Furthermore, the court concludes that plaintiff was provided adequate safety equipment, to wit, latex gloves, and that additional gloves were available despite plaintiff's testimony to the contrary. Additionally, while Cappadonna agreed that he was required to notify his superior of an inmate injury, he admitted that he did not recall doing so in this case. Nevertheless the court finds that Cappadonna acted reasonably in ordering plaintiff to report to staff inside 2B after plaintiff reported the injury.

{¶ 13} With respect to plaintiff's second claim, the court concludes, based upon the testimony given by both Cappadonna and Scott, that defendant had a duty to send plaintiff to the infirmary for treatment after he suffered the cut and that defendant breached that duty when plaintiff presented to Williams with an actively bleeding wound and she did not permit him to visit the infirmary for treatment. However, the court further finds that plaintiff failed to present sufficient evidence to establish that such breach proximately caused him any injury, particularly the partial amputation of his right pinky finger almost one year later. As noted earlier in this decision, plaintiff's initial injury was not the result of any negligence on the part of defendant.

{¶ 14} Judgment is recommended in favor of defendant.

{¶ 15} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

*and specifically objects to that factual finding or legal conclusion within 14 days of the*
*filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Daniel R. Forsythe                          Steven L. Snider, #551-066
Assistant Attorney General                  Mansfield Correctional Institution
150 East Gay Street, 18th Floor             P.O. Box 788
Columbus, Ohio 43215-3130                   Mansfield, Ohio 44901-0788

MR/cmd
Filed July 18, 2011
To S.C. reporter August 2, 2011